UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No.  06-251-01 (PLF) |
| | : | |
| DAVID C. FAISON, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

     The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing.  For the reasons set forth herein, the United States respectfully recommends that the Court impose a sentence which includes a six month term of imprisonment, an order that defendant pay restitution in the amount of $37,200, and a sentence of a three-year term of supervised release with the special condition that the defendant file all delinquent tax returns and pay all delinquent taxes, penalties and interest owed to the United States.

**I.     BACKGROUND**

     On September 6, 2006, defendant David C. Faison pled guilty to a one-count felony information which charged the defendant with theft of tools and materials for counterfeiting purposes in violation of 18 U.S.C. § 642 in connection with his stealing 21 sheets of partially printed $100 Federal Reserve Notes from the United States Bureau of Engraving and Printing ("BEP").  During his plea colloquy, and in his signed Statement of Offense, the defendant admitted to the following facts.

     The BEP was and is the Bureau of the United States Department of the Treasury that manufactures currency and other securities of the United States, including Federal Reserve

Notes. Federal Reserve Notes are printed, stamped and put into circulation on behalf of the United States as an obligation, instrument and currency of the United States. The BEP was and is located at the Bureau of Engraving and Printing Annex Building at the intersection of 14th and C Streets, SW, in the District of Columbia.

From at least May 2006, through August 2, 2006, David C. Faison was employed by the BEP as a Stock Control Recorder. As a Stock Control Recorder, Faison was responsible for distributing currency paper stock throughout the BEP, which allowed him regular access to Plate Printing Section 2 and other areas within the BEP were sheets of $100 Federal Reserve Notes were produced.

During the process of manufacturing $100 Federal Reserve Notes, Plate Printing Section 2 of the BEP processes sheets of specialized currency paper (parchment) which each contain 32 uncut, partially printed $100 Federal Reserve Notes. At one stage in the manufacturing process, the sheets of $100 Federal Reserve Notes contain 32 Federal Reserve notes which are complete with the exception that the bills do not yet have serial numbers or Department of Treasury Seals printed on them.

From at least May 2006 through August 2, 2006, David C. Faison, without authority from the United States or the BEP, stole at least 21 sheets of specialized currency paper from the Bureau of Engraving and Printing Annex. Each of the sheets of specialized currency paper contained 32 partially printed $100 Federal Reserve Notes which did not have serial numbers or Department of Treasury Seals. Defendant Faison secreted, embezzled, and took and carried away each of the 21 sheets of partially printed $100 Federal Reserve Notes and transported them from the BEP within the District of Columbia to his home in Largo, Maryland. Faison hid the sheets

of $100 Federal Reserve Notes with a total value of $67,200 in a roll of Christmas wrapping paper that he concealed in the closet of his bedroom.

From May 2006 through August 2, 2006, David C. Faison, while at his home in Largo, Maryland, hand cut at least 360 partially printed $100 Federal Reserve Notes from 12 sheets of 32 partially printed $100 Federal Reserve Notes.  Thereafter, Faison transported the Federal Reserve Notes to casinos in West Virginia, Delaware and New Jersey.  Faison used casino slot machines which accepted $100 bills to launder and convert the partially printed $100 Federal Reserve Notes to currency.  Faison converted the partially printed bills to completed currency by feeding the partially printed $100 Federal Reserve Notes into the slot machines, playing the slots for a period of time, and then causing the slot machines to issue tickets redeemable for cash at the casino cashier's office.  Thereafter, Faison redeemed the tickets at the casino cashier's office for cash.

On July 8, 2006, defendant Faison traveled to Midway Slots casino in Delaware, and inserted three partially printed $100 Federal Reserve Notes that he had stolen from the BEP into a slot machine.  Soon thereafter, Faison caused the slot machine to issue a cash ticket in the amount of $290 and converted that ticket to cash at the Casino cashier's office.

On July 19, 2006, defendant Faison traveled to Midway Slots casino in Delaware, and inserted nine partially printed $100 Federal Reserve Notes that he had stolen from the BEP into two slot machines at Midway Slots.  Soon thereafter, Faison caused the slot machines to issue cash tickets and converted those tickets to cash at the Casino cashier's office.

On July 27, 2006, defendant Faison traveled to Dover Downs Slots casino in Delaware, and inserted four partially printed $100 Federal Reserve Notes that he had stolen from the BEP

into a slot machine at Dover Downs. Soon thereafter, Faison caused the slot machine to issue a cash ticket and converted that ticket to cash at the Casino cashier's office.

On August 3, 2006, Special Agents of Federal Bureau of Investigation and the Department of Treasury Office of Inspector General searched the residence and the 2002 black Chevrolet Trailblazer of defendant Faison. During the searches, federal agents recovered, among other items, 9 complete sheets of partially printed $100 Federal Reserve Notes, 1 sheet containing 24 partially printed $100 Federal Reserve Notes, and plastic ziplock baggies containing heroin in an amount consistent with personal use.

The specialized currency paper the BEP uses to produce Federal Reserve Notes is manufactured by Crane & Company in Dalton, Massachusetts, which is the only authorized manufacturer of this currency paper. This specialized currency paper is unique in that it has (I) registration marks on the border of the sheets of 32 notes; (ii) red and blue fibers embedded within the paper; and (iii) the consistency of the paper is unlike other paper. This currency paper is not sold to the general public.

Defendant Faison acknowledges and admits that he owes restitution in the amount of $37,200 as a result of stealing 360 partially printed $100 Federal Reserve Notes and passing those Federal Reserve Notes to various casinos. This restitution amount includes $1,200 that "SAB" of Mid-Atlantic Coins paid to a third party for three of the partially printed $100 Federal Reserve Notes. At the time of purchase, SAB did not know the partially printed Federal Reserve Notes had been stolen.

II.    **SENTENCING CALCULATION**

    A    Statutory Maximum

The defendant pleaded guilty to one count of theft of tools and materials for counterfeiting purposes in violation of 18 U.S.C. § 642 . The maximum sentence for theft of tools and materials for counterfeiting purposes is ten years imprisonment, a fine of $250,000, or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), a $100 special assessment, and a three-year term of supervised release.

    B.    Sentencing Guideline Calculation

In the plea agreement, the United States and the defendant agreed and stipulated that the total offense level under the Sentencing Guidelines for the defendant's offense was offense level 12. See Plea Agreement ¶ 3. According to parties' stipulation in the plea agreement, this total offense level includes the base offense level of six pursuant to U.S.S.G. § 2B1.1(a)(2), and a six-level enhancement for "loss" of more than $30,000 pursuant to U.S.S.G. § 2B1.1(b)(1)(D). See Plea Agreement ¶ 3. In addition, the United States agreed in the Plea Agreement not to oppose a two point reduction for acceptance of responsibility, which yields a total offense level of 10, which is in Zone B of the Sentencing Guideline Sentencing Table. See Plea Agreement ¶ 3. The parties agreed, and the Pre-Sentence Report ("PSR") reflects that the defendant has a criminal history category of I. See Plea Agreement ¶ 3C, and PSR ¶ 28. The stipulated guidelines calculation contained in the plea agreement results in a stipulated guidelines range of 6 to 12 months of incarceration. At the time the plea agreement was executed, neither the United States

nor the defendant was aware that there were more than ten victims of the defendant's offense.[1]

Notwithstanding that more than ten victims of the defendant's offense have now been identified[2], the United States is rightly bound by, and will honor its agreement as to the stipulated total offense level and stipulated guidelines range. Accordingly, the United States will confine its sentencing recommendation to the stipulated guidelines range agreed to by the parties.

     The stipulated total offense level in the Plea Agreement is two levels less than the total offense level calculated in the PSR because the PSR included a two level enhancement for ten or more victims of the offense in its calculation of the adjusted and total offense levels for the defendant under the Sentencing Guidelines. The PSR calculated the adjusted offense level under the Sentencing Guidelines as offense level 14 based upon a base offense level of 6 under U.S.S.G. § 2B1.1(a)(2), a six level enhancement for loss of more than $30,000 under U.S.S.G. § 2B1.1(b)(1)(D), and a two level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(I) because the

---

[1]Additional victims were identified as the victims discovered that they had received partially printed $100 Federal Reserve Notes, and reported this discovery to law enforcement or the Federal Reserve. The nature of the defendant's criminal conduct, in which he placed partially printed Federal Reserve Notes into circulation at Casinos, makes it likely that victims would and will be discovered well after the execution of the plea, and probably after he is sentenced. For instance, the Office of Inspector General was recently informed of the discovery of an additional two partially printed Federal Reserve Notes by the Federal Reserve in Philadelphia, and the discovery of an additional partially printed Federal Reserve Note by the Federal Reserve in New York. Although the defendant placed the partially printed Federal Reserve Notes into circulation at less than ten casinos, once the Federal Reserve Notes were placed into circulation other victims, who might be characterized as downstream victims, received the Federal Reserve Notes.

[2]In order to assist the PSR writer with the issue of restitution in this matter, the United States provided the PSR writer with a list of the thirteen victims who had been identified at the time of the PSR writers' request for this restitution information, and also provided the amounts of each victim's loss. Since providing this list to Probation, the United States has learned that the Federal Reserve in Philadelphia has received and identified two additional partially printed Federal Reserve Notes and that the Federal Reserve in New York has received and identified one partially printed Federal Reserve Note.

offense involved ten or more victims.  See PSR ¶¶ 16-14.  The PSR recommends that the defendant receive a two level adjustment for acceptance of responsibility which yields a total offense level of 12, and places the 10 to 16 month guideline range calculated in the PSR in Zone C of the Sentencing Table.  See PSR ¶¶ 56-57.  The PSR states in paragraph 57 that since the Guideline Range is in Zone C of the sentencing table, the minimum term of imprisonment may be satisfied by a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one-half of the minimum term is satisfied by imprisonment.  See, U.S.S.G. § 5C1.1(d); and PSR ¶ 57.  Pursuant to its obligations under the plea agreement, the United States stands by the stipulated total offense level and stipulated guidelines range contained in the plea agreement.

The PSR writer did not find any factors indicating that a downward departure is warranted.  See PSR ¶ 73.  For the reasons set forth, infra section III of this Memorandum, the United States respectfully recommends that the Court impose a sentence which includes a six month term of imprisonment, an order that defendant pay restitution in the amount of $37,200, and a sentence of a three-year term of supervised release with the special condition that the defendant file all delinquent tax returns and pay all delinquent taxes, penalties and interest owed to the United States.

**III.   DEFENDANT'S SENTENCE SHOULD INCLUDE A SIX MONTH TERM OF IMPRISONMENT AND A THREE YEAR TERM OF SUPERVISED RELEASE.**

Under 18 U.S.C. § 3553(a), the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in section 3553(a)(2).  The Sentencing Guidelines, consisting of offense characteristics and various grounds for departure, address the

considerations relevant to sentencing, as articulated in Section § 3553(a), such as: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence to provide the defendant with needed medical care or other correctional treatment in the most effective manner; (4) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (5) the Guidelines Range; and (6) the need to provide restitution to victims of the offense. As demonstrated below, in this case these factors justify imposition of a sentence which includes a six month term of imprisonment, an order that defendant pay restitution in the amount of $37,200, and a sentence of a three-year term of supervised release with the special condition that the defendant file all delinquent tax returns and pay all delinquent taxes, penalties and interest owed to the United States.

     In this case, Mr. Faison's criminal conduct was serious, and represented a critical betrayal of the BEP, his co-workers, and American citizens who trusted Mr. Faison to do his work honestly and to safeguard the currency he was paid to help manufacture. The integrity of the American currency system depends greatly upon the vigorous enforcement of the counterfeiting laws, and on the presumption that BEP employees will not steal currency during the manufacturing process. Mr. Faison, as a thirty-six year employee of the BEP, well knew as he committed his crime that the BEP, his co-workers and the American people depended upon him to manufacture U.S. currency with honesty and integrity. Mr. Faison obviously also knew the detrimental effect his thefts would have on the BEP's reputation, budget and employee morale should he be caught stealing partially printed Federal Reserve Notes. Similarly, Mr. Faison had to have known that his theft of more than $67,000 in partially printed Federal Reserve Notes

would adversely effect the BEP's budget, operations, and employee morale as the BEP responded to the theft with more expensive and intrusive security measures. The BEP has described the detrimental effects of Mr. Faison's crime in its letter to the Court attached hereto as Exhibit A. Despite clearly understanding the wrongfulness and consequences of his criminal conduct, Mr. Faison selfishly chose to steal approximately $67,200 in partially printed Federal Reserve Notes to enrich himself.

After betraying his employer and stealing the partially printed Federal Reserve Notes, Mr. Faison thereafter victimized numerous people and entities by callously placing these partially printed notes into circulation. Mr. Faison placed the contraband, incomplete Federal Reserve Notes into circulation by utilizing slot machines at casinos to essentially launder the notes. The laundering of these notes certainly compounds the seriousness of Mr. Faison's criminal activity.

The principle of general deterrence and the need to promote respect for the law should be carefully weighed by the Court in formulating the defendant's sentence. Although the BEP will have to implement additional expensive security measures to prevent thefts in the future, it is impossible for security measures alone to deter and prevent thefts at the BEP. Indeed, the implementation of each new security measure comes with the additional cost to employee morale of creating another intrusion into the lives of its employees. The principle of general deterrence is critical in this case, because of the strong likelihood that an appropriate sentence, which includes a term of incarceration, will deter future thefts at the BEP. This Court should send a strong message, which the BEP can repeat to its employees, that thefts of currency by any person will not be tolerated and will be appropriately punished with a term of incarceration.

Although defendant's offense is serious and requires a just punishment which promotes respect for the law and deters future thefts at the BEP, the United States at the same time recognizes certain important aspects of the defendant's history and characteristics in fashioning its sentencing recommendation.  It is significant that Mr. Faison, who is 56 years old, accepted full responsibility for his criminal conduct at an extremely early stage of the criminal investigation.  Mr. Faison pled guilty prior to indictment, and after his plea, Mr. Faison met with law enforcement agents twice to discuss the details of his crime in order to enable the BEP to make changes in its security measures.  Mr. Faison was cooperative and appeared truthful in these meetings with law enforcement.  Mr. Faison's history of prior criminal convictions consists merely of a possession of heroin offense for which he was convicted more than twenty years ago in 1983.  See PSR ¶ 27.  Mr. Faison has claimed that his addiction to heroin dimmed his judgment during the relevant time period.  Balanced against this history and these characteristics of the defendant is the very disturbing fact uncovered during the pre-sentence investigation that Mr. Faison, while an employee of the Federal United States, did not, and apparently still has not filed a federal tax return for the years 2004 and 2005.  See PSR ¶ 51.  In addition, as a result of filing his tax return for the year 2003 in March 2006, and not paying certain taxes, late filing penalties and interest due under this return, Mr. Faison apparently is delinquent in paying the Internal Revenue Service more than $10,000 owed for tax year 2003.  See PSR ¶ 51.

Accordingly, the United States respectfully recommends that the Court impose a sentence which includes a six month term of imprisonment, an order that defendant pay restitution in the amount of $37,200, and a sentence of a three-year term of supervised release with the special condition that the defendant file all delinquent tax returns and pay all delinquent taxes, penalties

and interest owed to the United States. The United States concurs with the PSR writer's determination that the defendant does not have the financial ability to pay a fine.

## IV.    <u>RESTITUTION</u>

In the plea agreement, the United States and the defendant agreed that an order of restitution in the amount of $37,200 was appropriate in this case. This figure was premised upon the amount of partially printed Federal Reserve Notes that were not recovered in the search of Mr. Faison's house, and therefore, must have been placed into circulation, and upon the $1200 that a coin dealer paid for three of the partially printed Federal Reserve Notes (the $1200 was lost when the Secret Service confiscated the three contraband partially printed Federal Reserve Notes after the coin dealer notified the Secret Service that he had the Federal Reserve Notes). During his two meetings with law enforcement, Mr. Faison disclosed that he burned three of the partially printed bills. Because there is no way to verify Mr. Faison's claim that he burned three the partially printed bills and Mr. Faison admitted in his Statement of Offense that restitution in the amount of $37,200 is owed, the United States does not propose reducing the agreed upon amount of restitution by $300.

At present, it does not appear that all of the partially printed Federal Reserve Notes that Mr. Faison placed into circulation have been identified and recovered. Based upon current reports received by law enforcement, it appears that the victims who lost $26,100 as a result of the defendant's criminal conduct have been identified.[3] The United States respectfully requests

---

[3] As indicated earlier, the United States has recently learned that the Federal Reserve in Philadelphia has received and identified two additional partially printed Federal Reserve Notes circulated by Mr. Faison, and that the Federal Reserve in New York has received and identified one partially printed Federal Reserve Note circulated by Mr. Faison. Accordingly, the list of victims and amounts owed which appears in the PSR needs to be amended with this new

that restitution in the amount of $37,200 be ordered with the proviso that amounts due to victims who have yet to be identified be placed in the registry of the Court. If currently unidentified victims, who are owed restitution, are not identified by the time the defendant has served his sentence (including any term of supervised release), then the defendant should be permitted to petition the Court for the return of any restitution paid and held in the registry of the Court for unidentified victims.

                                            Respectfully submitted,

                                            JEFFREY A. TAYLOR
                                            UNITED STATES ATTORNEY

                                            _____
                                            JONATHAN R. BARR
                                            Assistant United States Attorney
                                            D.C. Bar # 437334
                                            Fraud & Public Corruption Section
                                            555 4th Street, N.W.
                                            Washington, D.C. 20530
                                            (202) 514-9620

---

information.