# EXHIBIT A



DEPARTMENT OF THE TREASURY
BUREAU OF ENGRAVING AND PRINTING
WASHINGTON, D.C. 20228

DIRECTOR

February 21, 2007

The Honorable Paul L. Friedman
Federal District Court Judge
United States District Court for the District of Columbia
E. Barrett Prettyman United States Courthouse
333 Constitution Ave., NW
Washington, D.C. 20001

      RE:  United States v. David C. Faison, 06-251 (PLF)

Dear Judge Friedman:

    Thank you for the opportunity to submit this letter on behalf of the Bureau of Engraving & Printing ("Bureau" or "BEP").  As the direct victim of Mr. Faison's theft of the 21 sheets of $100 Federal Reserve Notes, the BEP is uniquely positioned to provide you with critical information concerning the seriousness of Mr. Faison's criminal conduct, the severe negative impact Mr. Faison's conduct has had on the Bureau's operations, budget and employee morale, and the significant interest of deterrence of future thefts at the BEP which will be served by your sentencing decision.  Accordingly, we address those factors in this letter in the hopes that it will assist you in fashioning a just sentence for Mr. Faison which will also further the critical goal of deterring other employees from stealing currency from the BEP.

    **I.**    **Mr. Faison's Criminal Conduct was serious and negatively impacted BEP's operations, budget and employee morale.**

    The BEP is responsible for producing the nation's currency at its two production facilities located in Washington DC and Fort Worth, Texas.  The BEP is not funded through a Congressional appropriation; rather, the BEP operates under specific statutory authority which requires it to negotiate its billing rate each year with the Federal Reserve.  Thus, similar to a manufacturing company in the private sector, the BEP must produce its product within the negotiated budgetary constraints.  The currency order we receive from the Federal Reserve varies each year, but our two production facilities routinely combine to produce over 8 billion notes a year.  Although a significant portion of the BEP budget is dedicated to security and accountability measures, the mass production of United States currency requires a delicate balance between security and production concerns.  Tighter security and accountability measures generally results in lower, more expensive production output.  To strive towards achieving this balance, BEP employees occupy positions of public trust requiring integrity and restraint.

According to the Bureau's Office of Financial Management, the total loss was $67,200.00. To date, there have been no reimbursements made to the Federal Reserve or the casinos. As this case is pending, the eventual costs of the investigation and to implement corrective measures are unavailable at this time.

BEP employees take great pride in being the producers of United States currency and fully realize that they are in positions of public trust. When an employee, such as Mr. Faison, betrays that public trust through theft, it has a detrimental impact on employee morale. Additionally, many of the recommendations from the various audits that are being implemented as a result of Mr. Faison's theft directly impact the working conditions of the BEP workforce and lead to more intrusive security measures. Mr. Faison's theft also had an adverse impact on the American public's perception of the BEP as evidenced by the barrage of negative news in the local and national media.

II.     **Mr. Faison should receive a just sentence which furthers the critical goal of deterring other employees from stealing currency from the BEP.**

The Bureau of Engraving and Printing understands the difficult job you have in fashioning a just sentence for every defendant who appears before you. In fashioning the appropriate sentence for Mr. Faison's criminal conduct, the BEP hopes you will weigh carefully the significant deterrent effect this sentence could and should have in preventing others from committing the criminal acts Mr. Faison voluntarily chose to commit against the BEP and American public, which employed and trusted him for more than thirty (30) years. While the Bureau of Engraving and Printing can enact security measure after security measure to attempt to secure the currency produced, one of the most effective ways to deter thefts at the Bureau is for those who commit these crimes to be sentenced in a manner which sends a strong message that such criminal conduct will have serious consequences. The BEP hopes you will send such a message to Mr. Faison and to any other person considering committing the crime of stealing U.S. currency which they have been entrusted to produce.

III.    **Conclusion**

The Bureau of Engraving and Printing will continue to implement the most modern, cost effective security and accountability systems that are available. However, the mass production of United States currency will always leave the Bureau reliant upon the integrity of its workforce. It is highly unlikely that even the most draconian of security and accountability measures will prevent all thefts if an employee chooses to disregard his or her position of public trust. Therefore, in determining the sentence and fine that you ultimately impose on Mr. Faison, I respectfully urge you to take into

consideration the deterrent effect the sentence will have on others as well as consider any financial gain realized by Mr. Faison as a result of his theft.

Sincerely,

Larry R. Felix